UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:                                                          Case No. 23-44134-nhl

FRANCIS BISTRIAN a/k/a FRANK BISTRIAN,

                Chapter 7
                   Debtor.
-----------------------------------------------------------------X
ROBERT J. MUSSO, Chapter 7 trustee of the
ESTATE of NETWORK GROUP, LLC,                                   Adv. No.

      -against-

FRANCIS BISTRIAN a/k/a FRANK BISTRIAN,

                Defendant.
-----------------------------------------------------------------X

### COMPLAINT OBJECTING TO DISCHARGE AND
### TO DETERMINE DISCHARGEABILITY OF DEBT

Robert J. Musso, Chapter 7 trustee (the "Trustee" or "Plaintiff") of the estate of Network Group LLC ("Network"), as and for his complaint against Francis Bistrian a/k/a Frank Bistrian ("Debtor" or "Defendant") by his attorneys, Rosenberg, Musso & Weiner, LLP, respectfully alleges:

1.      This is an adversary proceeding brought pursuant to Section 523(a)(2) and (a)(4) of the United States Bankruptcy Code (the "Bankruptcy Code") declaring Plaintiff's claims against the Debtor to be non-dischargeable. Additionally, Plaintiff objects to the general discharge of the Debtor's debts pursuant to Section 727(a)(3) of the Bankruptcy Code.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 157 and 1334 in that it arises under Title 11, United States Code, in a case presently pending before this Court.

3.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J).

4.      Venue in this District is proper since the adversary proceeding arises out of, and is brought in conjunction with, a case under Title 11 of the United States Code which is pending in this District.

5.      This case began on November 14, 2023 (the "Filing Date"), when the Debtor s filed a voluntary petition under Chapter 7 of the Bankruptcy Code with the Clerk of this Court.

6.      By stipulation "so ordered" on June 12, 2024, Plaintiff's time to file a complaint to determine that any debts owed by the Debtor to Plaintiff and Plaintiff's time to object to the discharge of the Debtor was extended to September 16, 2024.

7.      Plaintiff is the duly appointed and qualified trustee of Network.

8.      The Debtor is an individual who resides at 457 Taconic Road, Greenwich Connecticut 06831. At all relevant times, the Debtor was the managing member of Network.

9.      The Debtor's wife, Mary Kate O'Neill a/k/a/ Katie Bistrian ("Katie"), was the co-founder, Chief Marketing Officer, and Chief Strategy Officer of Network.

10.      At all relevant times, the Debtor was also the manager of WWW Greenwich Railroad LLC ("Greenwich"), 457 Taconic LLC ("457 Taconic"), WWW East Austin LLC ("East Austin"), WWW Austin Eightfold LLC ("Eightfold"), and WWW Promenade LLC ("Promenade").

11.      Greenwich filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York under case number 19-46006-nhl.

12.      Network raised more than $2.75 million from investors and had income of approximately $500,000 in 2018.

13.      In December 2018, Network loaned $1,405,692.00 to Greenwich. Greenwich never repaid that loan.

14. On December 2, 2019 (the "Filing Date"), Network filed a voluntary petition in this Court under chapter 11 of the Bankruptcy Code and on July 1, 2020, the Court converted Network's case to one under Chapter 7.

15. On November 11, 2020, the Court issued an order designating the Debtor as the responsible person to perform all the obligations and responsibilities of Network including surrendering to Plaintiff all property of the estate and recorded information, including books, documents, records, and papers.

16. The Debtor failed to comply with the November 11, 2020 order, and Plaintiff filed a motion to hold him in contempt.

17. On February 11, 2022, the Court issued an order directing the Debtor and Katie to appear for examination under Bankruptcy Rule 2004 and to produce documents (the "Rule 2004 Order").

18. The Debtor produced a few, but nowhere near all, of the documents he was directed to produce in the Rule 2004 Order and he appeared at a Rule 2004 examination where he promised to produce the documents that he failed to produce in response to the Rule 2004 order.

19. At a hearing held on January 19, 2023, the Court directed the Debtor and Katie to produce the missing documents and other documents by February 7, 2023, directed Katie to appear for examination on or before February 24, 2023, and the Court "so ordered" the record.

20. The Debtor and Katie failed to comply with the January 19, 2023 order and the Plaintiff filed a second contempt motion, this time to find both the Debtor and Katie in contempt for their failure to comply with the Rule 2004 order and the January 2023 order.

21. At a hearing held on April 19, 2023, the Court determined that the Debtor and Katie were in contempt of court for their failure to comply with the Rule 2004 order and the January 2023

order.

22.    On April 30, 2023, the Court issued an order holding the Debtor and Katie in contempt of court for their failure to comply with the Rule 2004 Order and the January 2023 Order and directed them to pay to the attorneys for the Trustee legal fees and expenses in making the First Contempt Motion and the Second Contempt Motion (the "Contempt Order").

23.    The Contempt Order further provided that the Debtor and Katie could purge their contempt if within two weeks of entry of the Contempt Order, they produced all the documents that this Court directed them to produce or file a detailed affidavit as to why they cannot produce the documents, agree to a date for the Rule 2004 examination of Katie, and have Katie attend the examination.

24.    The Contempt Order further provided that in the event that the Debtor and Katie failed to purge their contempt within two weeks of entry of the Contempt Order they must pay to Plaintiff $100.00 per day for each day that they fail to comply with the Contempt Order.

25.    At a hearing held on May 17, 2023, the Court found that the Debtor and Katie had failed to comply with any of the provisions of the Contempt Order and therefore they had not purged their contempt.

26.    On May 25, 2023, the Court issued an order imposing sanctions on the Debtor and Katie of $100.00 per day beginning May 16, 2023.

27.    The Debtor and Katie have not purged their contempt, and they have not paid the sanctions to the Plaintiff.

28.    On May 25, 2023, the Court issued an order directing the Debtor and Katie pay Plaintiff's counsel $13,577.50 in legal fees and $28,80 in expense within ten business days.

29.    To date, the Debtor and Katie have not paid the legal fees and expenses awarded by the

Court.

30.    Although Plaintiff did receive from Network's former accountants, after serving a subpoena, some QuickBooks reports for Network, East Austin, Eightfold, and Promenade, Plaintiff never received any documents from the Debtor or Katie for the accounts maintained by them, the accounts for East Austin, Eightfold, and Promenade, credit card records showing the payments made by Network, East Austin, Eightfold, and Promenade for the Debtor's personal expenses, records for bank accounts which received transfers from Network, East Austin, Eightfold, and Promenade, transfers which Plaintiff believes benefitted the Debtor and Katie, and any documents showing what the Debtor did with the $2.75 million that investors invested in Network.

31.    In 2023, Plaintiff commenced an adversary proceeding against the Debtor, 457 Taconic, East Austin, Eightfold, and Promenade and an adversary proceeding against Katie, 457 Taconic, East Austin, Eightfold, and Promenade seeking to recover fraudulent transfers by Network, East Austin, Eightfold, and Promenade to 457 Taconic, the Debtor and Katie, to declare that the Debtor and Katie breached their fiduciary duty of care to Network, and that transfers by East Austin, Eightfold, and Promenade were transfers by Network. Plaintiff's action against the Debtor is stayed because of his filing a chapter 7 petition in this Court, but his action against Katie has not been stayed.

32.    In his action against Katie, Plaintiff filed a motion for a default judgment and in support of that motion filed the affidavit of Plaintiff's forensic accountant, Joseph Broderick.

33.    Broderick's affidavit is annexed as Exhibit A and incorporated by reference in this complaint. Broderick identified numerous transfers among the Debtor, East Austin, Eightfold, and Promenade showing that the Debtor treated all the companies as one big piggy bank that he

used for his and Katie's benefit. The Broderick affidavit also shows transfers by Network, East Austin, Eightfold, and Promenade to Katie and to 457 Taconic, transfers which Plaintiff submits benefitted the Debtor. Further, the Broderick affidavit shows payments by Network, East Austin, Eightfold, and Promenade for the Debtor's personal credit cards, at least $290,000 of which were for the Debtor's and Katie's personal expenses.

34.    Creditors filed more than $9 million in claims in Network's bankruptcy case, including claims by investors in Network.

**AS AND FOR A FIRST CAUSE OF ACTION DECLARING DEBTOR'S DEBTS TO NETWORK TO BE NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. §523(a)(2)(A)**

35.    Plaintiff incorporates by reference each and every allegation in paragraphs 1-34 as if fully set forth herein.

36.    11 U.S.C. §523(a)(2)(A) provides that any debt for money or services obtained by false pretenses, false representations, or actual fraud shall not be discharged.

37.    The Debtor caused persons to invest in Network and to provide goods and perform services for Network.

38.    Upon information and belief, the Debtor did not inform investors and creditors that he would treat all his companies as one big piggy bank, transferring money among the companies, causing the companies to pay each other's bills, and causing the companies to make transfers to him, Katie and to 457 Taconic, and causing the companies to pay his personal credit cards.

39.    Because of the Debtor's actions investors did not receive any money on their investments and many creditors did not receive payment for the goods and services they provided to Network.

40.    The Debtor intentionally, deliberately, wrongfully, and without just cause used false pretenses, false representations, or actual fraud by causing Network to incur debts that it could

not pay.

41.    A copy of Plaintiff's complaint (the "2023 Complaint") against the Debtor, 457 Taconic, East Austin, Eightfold, and Promenade in the adversary proceeding commenced in 2023 is annexed as Exhibit B and incorporated herein by reference. The 2023 Complaint details the Debtor's fraudulent behavior.

42.    All of Plaintiff's claims against the Debtor in the 2023 complaint are non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

**AS AND FOR A SECOND CAUSE OF ACTION DECLARING DEBTOR'S DEBTS TO NETWORK TO BE NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. §523(a)(4)**

43.    Plaintiff incorporates by reference each and every allegation in paragraphs 1-42 as if fully set forth herein.

44.    11 U.S.C. §523(a)(4) provides that any debts incurred by fraud or defalcation while in a fiduciary capacity shall not be discharged.

45.    As the Debtor's managing member, the Debtor owed the fiduciary duty of care to Network.

46.    The Debtor breached his fiduciary duty of care to Network by among other things, (i) comingling Network's funds with those of East Austin, Eightfold, and Promenade; (ii) using the Network's funds and those of East Austin, Eightfold, and Promenade to transfer more than $169,000 to 457 Taconic, an entity which he owns, in a series of transactions for which 457 Taconic did not pay reasonably equivalent value and then using those funds for his and Katie's benefit; (iii) distributing Network's funds to himself directly and by paying his personal credit card bills at a time that he knew that Network was insolvent and did not have the ability to pay its debts as they became due; (iv) using the Network's funds to pay the debts of entities affiliated with the Debtor, including East Austin, Eightfold, and Promenade, which Network was not

obligated to pay; (v) causing Network to loan more than $1,400,000.00 to Greenwich knowing that Greenwich would not be able to repay Network; (vi) causing Network to loan him $50,000 and failing to repay the loan; and/or (vii) making transfers to bank accounts which Plaintiff believes may have been for the benefit of him and Katie and then failing to produce statements for those accounts. See the 2023 Complaint annexed as Exhibit B.

47.    The Debtor's actions caused significant damages to Network in an amount of no less than $2,750,000.

48.    The Debtor's actions constituted a breach of his fiduciary duty to Network which caused money belonging to Network to be transferred to him or Katie or to be used for their benefit and constituted fraud and defalcation by the Debtor while acting in a fiduciary capacity.

49.    At least $2,750,000 of Plaintiff's claims against the Debtor are non-dischargeable pursuant to 11 U.S.C. §523(a)(4).

**AS AND FOR A THIRD CAUSE OF ACTION DENYING THE DEBTOR
TO BE NON-A DISCHARGE PURSUANT TO 11 U.S.C. §727(a)(3)**

50.    Plaintiff incorporates by reference each and every allegation in paragraphs 1-49 as if fully set forth herein.

51.    11 U.S.C. §727(a)(3) provides that a debtor's discharge should be denied if the debtor concealed recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained.

52.    The Court held the Debtor in contempt for failing to produce documents about his business and personal transactions and gave the Debtor the opportunity to purge his contempt.

53.    Because the Debtor did not purge his contempt, the Court sanctioned the Debtor $100 per day beginning May 16, 2023 and continuing until he provided the documents and directed him to

pay Plaintiff's counsel legal fees and expenses.

54.    The Debtor never provided the documents that the Court directed him to provide and never paid the sanctions or the legal fees and expenses.

55.    Because of the contemptuous behavior of failing to provide documents about Network and his other businesses and documents about his personal expenses that were paid by Network and his other businesses, Plaintiff has been unable to ascertain his business transactions and his financial condition.

56.    Because the Debtor concealed recorded information, including books, documents, records, and papers from which his financial condition or business transactions might be ascertained the Debtor's discharge should be denied pursuant to 11 U.S.C. §727(a)(3).

WHEREFORE, Plaintiff respectfully requests judgment as follows:

(1)    That all of Plaintiff's claims against the Debtor in the 2023 complaint are non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A);

(2)    That at least $2,750,000 of Plaintiff's claims against the Debtor are non-dischargeable pursuant to 11 U.S.C. §523(a)(4);

(3)    That the Debtor be denied a discharge pursuant to 11 U.S.C. §523(a)(4); and

(4)    That the Court grant such other and further relief as this Court deems just and proper.

Dated: Arlington, Virginia
     September 5, 2024

Rosenberg, Musso & Weiner, LLP
Attorneys for Plaintiff

By:    /s/ Bruce Weiner_____
       Bruce Weiner
       P.O. Box 127
       Garden City, New York 11530
       (917) 974-3175
       bweiner@nybankruptcy.net